IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIP KASO, et al.,

　　　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　CIVIL ACTION NO.　2:25-cv-00603

JAMES L. MITCHELL, *in his*
*official capacity as Superintendent*
*of West Virginia State Police*,

　　　　　　　Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiffs' *Civil Rights Complaint* (Document 1), *Defendant James L. Mitchell's Motion to Dismiss* (Document 7), *Defendant James L. Mitchell's Memorandum in Support of Motion to Dismiss* (Document 8), the *Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss* (Document 11), and *Defendant James L. Mitchell's Reply Memorandum in Support of Motion to Dismiss* (Document 14).　The Court has also reviewed the *Plaintiffs' Motion for Leave to File a Sur-Reply in Further Opposition to Defendants' Motion to Dismiss* (Document 16) and the attached *Plaintiffs' Sur-Reply in Further Opposition to Defendants' Motion to Dismiss* (Document 16-1).

In addition, the Court has reviewed the *Plaintiffs' Motion for Preliminary Injunction* (Document 17), the *Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction* (Document 18), *Defendant James L. Mitchell's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction* (Document 23), and the *Plaintiffs' Reply in Support of Motion for*

*Preliminary Injunction* (Document 24).  For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

## FACTUAL ALLEGATIONS

The named Plaintiffs, Philip Kaso, Stephen Basham, and Roderick Patton, are all subject to the West Virginia Sex Offense Registration Act.  They bring this case against Defendant Colonel James L. Mitchell, Superintendent of the West Virginia State Police, on behalf of themselves and all others similarly situated.  The Plaintiffs are all required to register for life. They are required to pay a $125 annual registration fee, which is statutorily designated for use by the State Police to "enhance mental health services for current and former employees of the West Virginia State Police…and then for any other use essential to the general operations of the State Police."  (Compl. at ¶ 13, quoting W. Va. Code § 15-12-2(o)).

West Virginia law does not provide for individual risk analysis or deregistration of sex offenders based on post-offense conduct.  Plaintiff Basham is disabled, indigent, and entirely dependent on benefit programs, but the fee applies regardless of ability to pay or indigency. Failure to pay the fee results in a judgment lien on the registrant's property.

The Plaintiffs assert the following causes of action: Count I – Eighth Amendment Punitive Fine, 42 U.S.C. §1983; and Count II – Due Process and Equal Protection Clause Violation, 42 U.S.C. § 1983.   They seek class certification, declaratory judgment that the fee is unconstitutional, injunctive relief, and attorney's fees and costs.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or

pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  *Iqbal,* 556 U.S. at 679.  Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

3

do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Defendant contends that the Registry Fee does not violate the Eighth Amendment because it is neither a punitive fine nor excessive. He contends that the legislature stated an intent that the fee be civil, not punitive, and the fee does not have a sufficiently punitive effect to overcome the non-punitive legislative intent. Even if it were punitive, the Defendant argues that the Plaintiffs failed to allege that the fee is grossly disproportional. The Defendant also argues that the fee does not violate the equal protection clause because there is no disparate treatment, and to the extent there is disparity in effect for indigent sex offenders unable to pay the fee, the Registry Fee is supported by a rational basis. Finally, the Defendant argues that the Registry Fee does not violate the Due Process Clause because no hearing is necessary given that the law

4

provides for the fee to be imposed as to all offenders on the registry, and there would be no facts to determine during a hearing.

The Plaintiffs argue that the stated legislative purpose is of little value because it originated with a 1999 reenactment of the Sex Offender Registration Act that did not include a fee, while the Registry Fee was only added in 2024.  They emphasize that the Registry Fee is punitive because it "bears no reasonable relationship to the cost of the service it purportedly supports."  (Pls.' Resp. at 7.)  They contend that the administrative registry duties cannot reasonably be considered a driver of mental health issues such that the Registry Fee would be linked to the designated use of the funds.  They point out that the Registry Fee "does not fund registry operations, does not relate to the administration of SORA, and is enforced through the State's lien powers" which "mirrors the attributes of a financial sanction rather than a civil regulatory fee."  (*Id.* at 10.)  They argue that their allegations are adequate as to disproportionality at the pleading stage.  They further contend that they have plausibly alleged an irrational, wealth-based classification because failure to pay the fee automatically results in a lien, regardless of ability to pay, and those allegations are sufficient to state an equal protection claim.  They also argue that the statute violates procedural due process because it provides no avenue to contest application of the fee and subsequent judgment lien.  They urge the Court to deny the motion to dismiss.

### A.  Eighth Amendment

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const., Amdt. 8.  A payment is a "fine" if it is "a punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 327, (1998) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.* 492 U.S. 257, 265

5

(1989)). "Civil fines serving remedial purposes do not fall within the reach of the Eighth Amendment" but a civil sanction that serves in part to punish is subject to the Eighth Amendment. *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 277 (4th Cir. 2007). In cases addressing property forfeitures, the Fourth Circuit explained that when "the forfeiture stemmed, at least in part, from the property owner's criminal culpability…[it] does constitute punishment and so is subject to proportionality review under the Excessive Fines Clause." *United States v. Jalaram, Inc.*, 599 F.3d 347, 354 (4th Cir. 2010). If a fee is properly considered a punitive fine, it is impermissible only if it is excessive, or grossly disproportionate. *Id.* at 351. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334.

The Supreme Court established a two-part test to determine whether a statutory requirement is punitive or civil and nonpunitive for purposes of the ex post facto clause. First, courts consider whether "the intention of the legislature was to impose punishment." *Smith v. Doe*, 538 U.S. 84, 92 (2003). "[C]onsiderable deference must be accorded to the intent as the legislature has stated it." *Id.* The inquiry ends if the legislature expressed an intent to impose punishment. *Id.* If the legislature intended "to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal punctuation and citations omitted). "[T]he clearest proof" is required to "override the legislative intent." *Id.*

The Fourth Circuit has found that a forfeiture is properly considered punitive if it "resulted at least in part from the criminal activity of the property owner" and cannot be imposed upon an

6

innocent person, but only following criminal conviction. *Jalaram, Inc.*, 599 F.3d at 354. The Seventh Circuit emphasized that "Labels don't control. A fine is a fine even if called a fee, and one basis for reclassifying a fee as a fine would be that it bore no relation to the cost for which the fee was ostensibly intended to compensate." *Mueller v. Raemisch*, 740 F.3d 1128, 1133–34 (7th Cir. 2014). The Supreme Court has also recognized the risk that excessive fines may be imposed as a convenient source of revenue with less risk of political opposition, without regard for their impact on penal goals. *Timbs v. Indiana*, 586 U.S. 146, 153–54 (2019).

The West Virginia Legislature included an intent provision related to the Sex Offender Registration Act, which provides that "[t]his article is intended to be regulatory in nature and not penal." W. Va. Code § 15-12-1a(a). The Registry Fee provision was added to the Act effective 2025, while the intent provision was enacted in 2000. By placing the fee provision within the article to which the intent provision applies, the Legislature stated an intent that the fee be non-punitive. However, as the Plaintiffs point out, the Registry Fee has characteristics in common with punitive fines. It is not directed to be used to defray the costs of the registry, but for mental health services for the State Police, a purpose at best tangentially related to the sex offender registry. Additionally, a criminal conviction is a prerequisite for imposition of the fee.

The Court finds it unnecessary to resolve whether the Registry Fee, as enacted in West Virginia, is punitive, because the Plaintiffs have not pled facts that would permit a finding of gross disproportionality.[1] The $125 annual fee is imposed against individuals who have been convicted of sex offenses. The Registry Fee is applied uniformly to all who are required to register, with no

---

[1] The Court does not adopt the Defendant's position that the failure to specifically plead gross disproportionality is fatal to the Plaintiff's Excessive Fines Clause claim. No magic words are necessary, and pleading the nature and amount of a fine, in contrast to the seriousness of the conduct, would suffice to state a claim, if those facts would permit a finding that the fine was, in fact, grossly disproportional to the offense.

individualized weighing of the seriousness of individual conduct and the appropriate penalty. However, the offenses that require registration are serious crimes.   The Court cannot find that the $125 annual fee is grossly disproportionate to even the least culpable of sex offenders, and even to those who may be required to pay it every year for several decades with lifetime registration. *See Mueller v. Raemisch*, 740 F.3d 1128, 1134 (7th Cir. 2014) (finding no evidence that a $100 annual fee was "grossly disproportionate to the annual cost of keeping track of a sex offender registrant").   Therefore, the Court finds that the Plaintiffs have not stated a claim that the Registry Fee violates the Excessive Fines Clause, and the motion to dismiss should be granted as to Count One.

### B. Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution provides that "no state shall…deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. Amdt. 14.   "Due process and equal protection principles converge in the Court's analysis" in the line of cases addressing treatment of indigent defendants and litigants.   *Bearden v. Georgia*, 461 U.S. 660, 665 (1983).   "The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs," while the "due process concern homes in on the essential fairness of the state-ordered proceedings anterior to adverse state action. *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996).   "[W]e inspect the character and intensity of the individual interest at stake, on the one hand, and the State's justification for its exaction, on the other."   *Id.* at 120-21.

The Supreme Court has analyzed several cases involving indigent litigants who are unable to pay fees or fines.  It rejected state practices requiring criminal defendants to pay for a trial transcript in order to bring an appeal.  *See, e.g.*, *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."); *Mayer v. City of Chicago*, 404 U.S. 189, 196–97 (1971) (describing *Griffin* as "a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way" and rejecting the argument that the State's fiscal interests outweighed an indigent defendant's interest in pursuing an appeal of a petty offense for which he would be subject to only a fine).  The Court also rejected sentencing schemes that allowed defendants to either pay a fine or serve jail time, finding that the Fourteenth Amendment does not permit imprisonment based on the inability to pay a fine.  *Williams v. Illinois*, 399 U.S. 235, 242 (1970); *Tate v. Short*, 401 U.S. 395, 399 (1971).  Likewise, the Supreme Court has found Fourteenth Amendment violations where fees and costs would prevent indigent parties from obtaining a divorce, *Boddie v. Connecticut*, 401 U.S. 371, 382 (1971), contesting paternity, *Little v. Streater*, 452 U.S. 1, 12 (1981), or appealing the termination of parental rights, *M.L.B. v. S.L.J.*, 519 U.S. 102, 124 (1996).

However, the Supreme Court has explained that those rulings establish "exceptions to [the] general rule" that "fee requirements ordinarily are examined only for rationality" and "[t]he State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement." *M.L.B.*, 519 U.S. at 123-24.  The Supreme Court found that neither an interest in bankruptcy discharge nor an interest in increased welfare payments has sufficient "constitutional significance" to warrant rejection of filing fees for indigent litigants.  *Ortwein v. Schwab*, 410 U.S. 656, 659

9

(1973) (citing *United States v. Kras*, 409 U.S. 434, 446 (1973) regarding bankruptcy). Fundamental rights, such as free speech or marriage, and the "suspect criteria of race, nationality, or alienage" require a "compelling governmental interest," while regulation of other interests requires only "rational justification."  *United States v. Kras*, 409 U.S. 434, 446 (1973) ("There is no constitutional right to obtain a discharge of one's debts in bankruptcy.")

The Registry Fee imposes an annual charge on all sex offenders who are required to register under West Virginia law.  Failure to pay does not constitute violation of the registration requirements, nor does it incur any criminal penalty.  Failure to pay, whether resulting from indigency and the inability to pay or a refusal to pay, results in a judgment lien against the individual's property.  A judgment lien for failure to pay a fee or fine does not implicate a fundamental right.   Thus, rational basis review applies.

Unless a statutory classification "burdens a fundamental right [or] targets a suspect class," it will be upheld "so long as it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).   There is "a strong presumption of validity" for a challenged statutory classification, and those challenging the classification bear the burden of "negat[ing] every conceivable basis which might support it."  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).   The inquiry ends "[w]here there are 'plausible reasons' for" legislative action.  *Id.* at 314 (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).   However, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

10

In enacting the $125 annual Registry Fee, the West Virginia legislature did not explicitly distinguish between indigent and non-indigent registrants. It simply imposed the same fee as to all registrants. The legislature is not required to articulate its rationale for the legislation. Because the legislature could have believed the fee to be a reasonable method of both defraying the costs of administering the sex offender registry and funding mental health services for the State Police, it passes rational basis muster. To the extent the Plaintiffs contend that indigent and non-indigent registrants are treated differently, the Court finds that the legislature had a potential rational basis for limiting the costs and burdens associated with the fee by imposing a flat fee on every individual required to register, without establishing a process for exemptions. Ultimately, the Fourteenth Amendment claim(s) rest on the premise that the Constitution requires an indigency exception for governmental fees or monetary charges. The Plaintiffs have cited no authority for that proposition. Because the Defendants are not required to evaluate a registrant's ability to pay prior to imposing the fee or entering a judgment lien, due process does not require that a hearing be provided. Therefore, the Court finds that the Plaintiffs have failed to state a claim that the Registry Fee violates the Fourteenth Amendment. The Defendant's motion to dismiss should accordingly be granted, and the motion for a preliminary injunction must be terminated as moot.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant James L. Mitchell's Motion to Dismiss* (Document 7) be **GRANTED**, that *Plaintiffs' Motion for Preliminary Injunction* (Document 17) be **TERMINATED as moot**, and that this matter be **DISMISSED** without prejudice.

11

The Court further **ORDERS** that *Plaintiffs' Motion for Leave to File a Sur-Reply in Further Opposition to Defendants' Motion to Dismiss* (Document 16) be **GRANTED** and the attached *Plaintiffs' Sur-Reply in Further Opposition to Defendants' Motion to Dismiss* (Document 16-1) be **FILED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    May 4, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA